May it please the Court, I am Mark Mackin. I am appearing on behalf of the appellants, plaintiffs below, Glenn and Selesia Eagleman and Teresa Small. I'd like to reserve three minutes for rebuttal, if I may. This case began as a personal injury lawsuit in a tribal court on the Rocky Boys Chippewa-Cree Reservation in Montana. There are two, now I guess three issues before the Court because the Court asked for supplemental briefing on the issue of jurisdiction under 1331. Before you get to that, could I just ask a question? I want to make sure I understand the claim that's actually before us. So when I looked at your second amended complaint in district court, I didn't see the personal injury claim in that complaint. Is that right? So the complaint seemed to be saying that you were wrongfully kicked out of court by the tribal officials. Correct. That's the nature of the claim. So your actual claim for damages against the housing authority isn't before us. Is that right? That is correct, Your Honor. That's correct. And so help me understand then the claim that's before us against the individuals, I think it's Billy and Hay in their individual capacities. Given the nature of your claim that you were wrongfully kicked out of court, what did they do? The nature of the claim against Susan Hay and Ms. Billy is that they were wrongfully kicked out of court. What was their role in kicking you out of court? Right. Billy is an employee of the Housing Association. She issued a no-bid contract to dispose of the remains of Glenn's house after the explosion. But that's your personal injury. That's your claim for damages. And I don't think that's before us. That's not you just said, that's not before us. So what she did was something with that tort action. But the tort action, I didn't see in your second amended complaint. I guess I'm not sure I understand the question. I'll try and go on. Billy issued a no-bid contract. It was the bid contract limits were $5,000. After that you have to bid. And then once you're at, but she issued a $10,000 contract for the disposal to a relative. Are you suing her for that in district court? Is that in your complaint? We're suing her for that in the district court. It's in my, it is mentioned in the district court complaint, but it's mentioned in passing to set up the background of the complaint. Okay, so that's not your complaint in district court. No, it is not. Okay, your complaint in district court is that the tribal court made a mistake in kicking you out of court. Is that right? Correct. Both in the, in terms of the tribal immunity, the waiver of tribal immunity on for the housing entity and also secondarily for the employees of the housing entity. And did Billy and Hayes and Hayes have anything to do with that wrong, being kicked out of tribal court? No, that, for that we named the tribal business committee and the, and the tribal appellate court because that's where the, those injuries occurred. Okay, I understand. Thank you very much. So in Bodie v. Shingle Springs, this court stated that the defense of tribal sovereign immunity does not provide an independent basis for federal jurisdiction under 28 U.S.C. Section 1331. How does that case not preclude subject matter jurisdiction here? Okay, we're moving down to the third issue, I guess. The federal question can be based on, I guess if I can take it through the steps. Federal question jurisdiction can be based on the case law and since Ex parte Crow Dog in 1883, Indians have been coming to federal courts to request relief. 13, we see 1331 as a clear and unequivocal waiver of all government's immunities to suit in federal court on federal questions. And this includes tribal governments. Tribal courts are tribal, tribes are not excluded under 1331. So, but 1331 is not a federal question by itself. In other words, there has to be something else that triggers access to the courts under 1331. And I'm referencing Bodie and Oklahoma Tax Commission for that. There were issues that were strictly state and not tribal, excuse me, state and not federal, and those couldn't go to federal court under 1331. Is there a question about our jurisdiction over the defendants in this case? Are they claiming that we don't have jurisdiction over them because they're immune? I think that the defendants are saying that because, but that 13, hmm, how do I say this? But you have a claim here in district court that you were wrongfully kicked out of court and you're bringing a declaratory action against the tribe, the housing authority, the tribal officials and the like. And are they claiming that they're immune from your suit in our court? Yes, they are. And what they're saying is that the tribes are arguing that non-Indians can access the federal courts on federal questions, but Indians, whether they're members of the same or a different tribe, cannot. So they're saying we don't have jurisdiction over them here. Correct, because essentially my clients are Indians. But Congress granted Native Americans citizenship in 1924. Even when there were wards of the government, though, they had access to the federal courts. Eagleman's accepted tribal jurisdiction over the personal injury case that they brought to tribal court. And if we had gone to trial and we had lost at trial and lost on appeal, it would be over. It would be raised judicata. One more question. So in a declaratory judgment action, we're supposed to look at the claim that the defendant has. So the declaratory judgment action sort of flips our analysis and you're bringing in an action saying there's a claim, you're anticipating a claim that's going to be brought by the defendants. What's the claim that the defendants have here? What's the claim that you're anticipating that they are going to raise against you? I don't know. Okay. So you're not aware that they have any claim against you, against your client? No. There's never been any counterclaims, but we didn't get to the point of answer either. So right now your claim is only that you were wrongfully, but you're not raising a constitutional due process claim of any sort, are you? Raising a what, Heather? A due process claim? A what claim? Due process. Yes, we would like to raise a due process claim, but right now it's just... No, not what you would like to do. What are you raising? We are raising that we were wrongfully denied access to the courts in tribal court because of a misapplication of the law of tribal sovereign immunity. That's the core of the case. But they're not raising any claim that you're aware of right now, as we sit here. Not that I know of. Okay, there's no claim. Okay. So tell me this. If we said, as a legal matter, you're not immune, they are immune, or they're not immune, what remedy could we provide you? So we can enjoin persons who we have jurisdiction over, but what remedy could we give you? I don't think there is one. We're done at that point. If we can't access the waiver that the tribe put into the housing ordinance and overcome tribal sovereign immunity that way, then we're finished at this point. So let's say we agree with you, and in fact the tribal court analyzed sovereign immunity wrongly. They were wrong. And in fact, they don't have immunity. What relief could we as a federal court give you? Do you send the issue back to the district court on remand with instructions to tell the tribal court how to properly interpret? So the district court could have a ruling, but the tribal court, we have no authority over the tribal court. So all you would have is a ruling saying the tribal court analyzed sovereign immunity wrong, and then what do you do with that? Because we can't order the Well, we can go back to tribal court with that and say that the ruling was wrong, it was an error, and we want to restart the case in tribal court. And would the tribal court do that, or would they just say, you know, sorry, we decided it already, you're out of here? They don't have any requirement to reopen the case, do they? And I don't know if they will or not. There's every indication that they won't at that point. Maybe the only relief that we could come back for is under the Indian Civil Rights Act and a due process. So if we said we had jurisdiction to determine the issue of whether sovereign immunity was correctly ruled on, and we said that as to the individuals, the court misapplied the case law, Lewis and other case law, that the individuals would not be entitled to sovereign immunity, and we remanded it to the tribal court, the tribal court wouldn't have to do anything? Is that what you're saying? I'm not sure. All we can do is put it back to the tribal court, and we expect them to follow federal law. But their case is already decided. So do they have, is there anything in their statutes or the rules that would require them to reopen the case? We have mentioned due process concerns all the way along. And if the court wanted to rule on a due process basis that this, that that wrong was committed, that Eaglemans were denied a fair trial in a tribal court, then that would be acceptable to us. But that's not before us. No. We don't rule on things that aren't before us. I understand. All right, do you have any additional questions? All right, we've taken you over your time, but I'll give you two minutes for a rebuttal. Thank you, Your Honor. Thank you. May it please the Court, Evan Thompson on behalf of the Chippewa Cree Housing Authority and its officials, Donna S. Hay and Thela Billy. I may refer to them collectively here and after as the Housing Authority or CCHA. I think we shouldn't lose sight of the procedural history of this matter which led us to this point. Appellants originally chose to pursue their claims against CCHA because they felt that they had a right to do so. They were unsuccessful there being dismissed on both sovereign immunity and on statute of limitation grounds. Appellants were unhappy with this result. Three years later, they filed in district court seeking an appeal of the tribal court's decisions. The appellants concede even here that tribal jurisdiction is proper for their underlying claims and they request that their case be remanded back to tribal court for re-decision. Can we do that? So in other words, let's say that we agreed with the appellant here that all or some of the defendants in his declaratory action lacked sovereign immunity from his suit and we make that ruling. What effect does that have on the tribal court? It has no effect on the tribal court. The tribal court is a sovereign. It's a sovereign entity. It has its own court systems. As they said in Santa Clara Pueblo, tribes are free to make their own laws and be ruled by them. All right. But sovereign immunity is created by Congress in federal law, correct? Sovereign immunity is a reserved and inherent right of a sovereign nation. Well, but this sovereign immunity isn't the same as say like a state or another country. I mean it's congressionally created by federal law. That is not my understanding of it, Your Honor. My understanding is it's an inherent right and in fact it's coextensive with United States sovereign immunity. There's Supreme Court opinions on that. So in our court, because the argument has all been what's the rule in tribal court, but in our court here is your client or clients claiming that you have sovereign immunity and we in fact can't even rule in this case. Was that raised in district court? It was raised in district court, but what we raised in district court was first that the district court lacked subject matter jurisdiction to ever reach the issue of sovereign immunity. But we could address either issue first, right? Because they're both threshold issues and not on the merits. They're both threshold issues, but I think it would be more appropriate to address subject matter jurisdiction first because sovereign immunity divests a district court of subject matter jurisdiction. So if it never had subject matter jurisdiction to begin with, I think it would be more appropriate to address that first and then move on to the sovereign immunity analysis. Well, it looks like though, it looks like the tribal court didn't properly apply Lewis v. Clark. Looks like as to the individual capacities. Well, actually Lewis v. Clark post dated the tribal court decision. So the tribal court made its rulings long before Lewis v. Clark came about. But we feel that it made a proper determination anyway because Well, let's say we don't agree. Okay. Well, I think that Then why doesn't that fact defeat sovereign immunity as applied to them? Well, I think Lewis v. Clark is distinguishable on a number of, for a number of reasons. It happened outside of reservation boundaries. We're not talking about actions that occurred outside of the reservation here. Well, let me just ask, what if we decided that the individuals under Lewis v. Clark, the individuals, I guess, Billy and Hay, lacked sovereign immunity either in the tribal court or before us and we make that ruling. What effect does that have on the tribal court? Now, can we, if we make that determination, here's the correct analysis of sovereign immunity as a matter of federal law, then what happens in the tribal court? Well, I think that the tribal court action has concluded and I don't know that there's any authority that would require the tribal court to reopen those proceedings. I think it's a done deal. And I think that if we're talking about it in this action, I think the court needs to look at the relief requested. They haven't requested any relief against, from fellow Billy or Donna Hay. So he says, the opposing counsel says, the only claim before the district court is that the tribal court wrongfully kicked them out of court so that the tribal court's decision was wrong and that's the only claim. That's the only claim that we can read in their second amended complaint as well. Well, if the federal courts have jurisdiction over sovereign immunity, then and determined that it was wrongfully applied as a defense, then are you saying that the tribal courts are just free to disregard it? I believe so as a sovereign nation. So they could. I suppose we could speculate that they might reconsider. There might be a motion to reconsider. But there's no rule that would require them to do so. I'm unaware of any laws of the Chippewa Cree tribe that would require them to reopen this matter. So is it your position that the federal courts can't look at sovereign immunity either offensively or defensively? Well, I think there are circumstances in which a federal court may look at sovereign immunity and sovereign immunity issues. The context that it's typically come up in is where a non-Indian litigant has said that the tribal court has exceeded the lawful limits of its jurisdiction. And so in that situation, I think that the non-Indian U.S. citizen has a right to be free from tribal jurisdiction. We're not dealing with that fact pattern here, though. We're talking about Indians living on a reservation, suing Indians, officials, and Indian tribes and tribal organizations. So in those cases where there's a whole host of cases where the claim is that the tribal court exceeded its jurisdiction in requiring a non-member or a non-Indian to do something. And then when that claim is brought to district court, the district court has authority to enjoin the tribe or whoever it is from taking an action. I don't think that it's authority to enjoin. The way that I've read it is more in lines of comedy, in that when the federal courts are looking at these, the action they take is whether or not to recognize the tribal court judgment, but they don't go back in and then tell the tribal court what to do. They allow that non-Indian litigant to proceed in federal court because there was no jurisdiction over them originally. Well, so does comedy from to the principles of federal tribal comedy preclude federal court review? I don't think they preclude review, but I don't think they authorize federal courts to act as appellate bodies for tribal courts. There's no case. I didn't find a case that's so held, and you're not aware of one. I'm unaware of any. And I think, you know, as the Tenth Circuit in Burrill v. R. Mio, citing to National Farmers Union, stated, federal courts are not the, this is quote, federal courts are not the general appellate body for tribal courts. As the Supreme Court has instructed, the federal policies promoting tribal self-government and self-determination instruct us to provide great deference to tribal court systems, their practices and procedures, this heed we do not take lightly, end quote. So I think that, I think that Burrill is instructive in that we've reached an issue that the tribal court has, was raised in tribal court, they've considered it, they've issued their opinion, and I don't think that the federal court should disturb that. But as to whether we ever have jurisdiction to review sovereign immunity, you concede that we may. You may, but I think that under the cases we cited in supplemental briefing, issues of sovereign immunity alone do not create federal jurisdiction under Section 1331. There has to be some other basis. Here there's no, I was trying to understand the declaratory judgment action, because normally, as I said, we flip it, and it's the party bringing the deck relief action who is anticipating a lawsuit or a claim by the defendant. But here the tribal defendants aren't bringing any claim. The question is the appellant believes that the tribal officials owe him money or damages for the injuries that were done to his house and the like. But there's no claim being brought by the tribe or any enforcement action. None. Yeah, I'm a little confused by the nature of the complaint, myself. But in any event, the tribe is not seeking any relief from the appellants. So I think it's also, I think it was important to look in at the district court and its determination that it was divested of subject matter jurisdiction. It seems as if appellants have made all their arguments on the assumption that that order applied to the tribal court's determination on that point, and I don't think it does. But even if we go beyond the scope of the order, and even if we want to have an academic discussion about sovereign immunity, because I don't think we've reached that issue, appellants have conceded that a waiver of sovereign immunity is only applicable in the sovereign. It is not applicable in federal court. So, and there's Ninth Circuit opinions that confirm that. So I think that even if there had been a waiver somehow by the sue and be sued clause, that at the end of the day, that waiver is only effective in tribal court. It's not effective in federal district court, and the federal district court made the right determination in dismissing on that basis. All right. Unless there's further questions, you've gone over your time. Thank you. Thank you. Thank you. Thank the court for its indulgence on the extra time. In thinking about it and listening to the exchange today, my thoughts, my thought is at this time that we sought relief under 1331 and for, and tribal sovereign immunity is a common law issue. So perhaps it deserves a common law remedy for Iglamas being deprived of a fair trial and some kind of remedy for their injuries, either in terms of some restriction on the tribe, in other words, the original injunction that we had requested at the district court level. And I think that the court should treat this in a, should see the bigger picture here too. Indians should not be treated differently than non-Indians in their own courts. There's also the question of the uniformity of law governing tribal sovereign immunity between, and there are 589 reservations, and you're going to end up with 589 different kinds of decisions about how, about tribal sovereign immunity between Indian citizens of all tribes and the Indian governments of each tribe. Also there, this court case does involve the Native American Housing Assistance and Self-Determination Act. There are regulations under that act where tribal sovereign immunity is preserved, but the regulations require insurance for liability and that the tribes waive tribal sovereign immunity to the limits of insurance. So I'm not sure that, I believe that this issue also implicates other federal statutory issues. I may be reaching there, but I think it's worth considering. There may be remedies there that I am not aware of. All right, well your time's up, so I'm going to ask you to conclude. Thank you, Your Honor. All right, thank you. Thank you both for your argument in this matter. It will stand submitted.
judges: Fernandez, Callahan, Ikuta